Charles **FULTON**, Plaintiff-Appellee,

v.

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, A Corporation,** Defendant-Appellant.

No. 80–1021.

United States Court of Appeals, Tenth Circuit.

April 20, 1982.

Ben Franklin of Franklin, Harmon & Satterfield, Oklahoma City, Okl. (Donald E. Engle, St. Louis, Mo., of counsel, with him on the brief), for defendant-appellant.

E. L. Kinch, Wichita, Kan. (Charles Daniel, Drumright, Okl., with him on the brief), for plaintiff-appellee.

Before LOGAN and BREITENSTEIN, Circuit Judges, and BROWN,* District Judge.

LOGAN, Circuit Judge.

The St. Louis-San Francisco Railway Company appeals from a jury verdict awarding damages to its employee Charles Fulton for personal injuries in Fulton's suit under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. Fulton's injuries had occurred when he attempted to rescue a fellow railroad employee, Dan McBride.

On appeal the railroad contests its liability, contending that the trial court (1) should not have permitted the jury to consider the American Association of Railroads' Loading Rules and the railroad's duty to inspect its freight cars, and (2) should have instructed the jury that any negligent conduct of McBride which placed him in an imperiled position was not attributable to the railroad. The railroad also objects to the damages awarded, contending that the trial court (1) should have instructed the jury that any money damages awarded Fulton would not be subject to income taxes, and (2) should not have allowed the jury to include in Fulton's damages future loss of earnings. We affirm the jury's finding that the railroad is liable, but reverse and remand for a new trial on damages.

In October 1974 in Vinita, Oklahoma, railroad employees Fulton and McBride were assigned to remove several telephone poles from a flat car loaded with about seventy poles. The poles, each weighing between 500 and 1000 pounds, were bundled together in groups of twelve to fifteen. Long wooden stakes had been inserted into sockets on each side of the flat car, three on the north side and two on the south, to immobilize the poles and insure they would not shift in transit. McBride and Fulton decided to unload the poles on the north side of the car and, consequently, removed all three stakes on that side. They leaned two of these stakes against the north side of the car to use as a ramp for the poles to roll down and away from the car. Using a hacksaw, McBride cut the bindings around some of the bundles, and those poles rolled down the ramp as McBride and Fulton had intended. McBride then moved to the south side of the car, where only two wooden stakes secured the load. While standing on the edge of the car, McBride cut the bindings securing a bundle of poles. As he did so several poles suddenly rolled south against one of the stakes and McBride, simultaneously breaking the stake and knocking McBride to the ground. Five poles rolled onto McBride and seriously injured him. Fulton immediately rushed to McBride's rescue and began to lift the poles off his body. In so doing, Fulton sustained back injuries that required medical attention and surgery. Fulton thereafter brought this action, alleging that his back injuries had caused him pain and suffering and permanently impaired his future earning capacity. The jury awarded him general damages of $125,000. From this verdict the railroad appeals.[1]

## I

The railroad argues that the trial court should not have allowed into evidence the railroad association's loading rules nor given any instructions concerning them. As a member of the American Association of Railroads, the defendant has agreed to comply with the Association's rules. The rules specify the dimensions, quality, and quanti-

---

* Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

1. After Fulton presented his case, the railroad moved for a directed verdict, alleging that the evidence was not sufficient to support a verdict for Fulton. Fulton now argues that because the railroad neither renewed its motion for a directed verdict after all the evidence was presented nor moved for a judgment notwithstanding the verdict, our review of the entire case is limited to determining whether there is any evidence in the record to support the jury verdict and whether the trial court committed plain error. Because the railroad made contemporaneous objections to all jury instructions and evidentiary rulings it challenges on appeal, Fulton's argument has no merit.

ty of wooden stakes used to secure loads. Rule 10(b) provides that when, as here, the poles are more than 20 feet long, a flat car like the one involved in this case must have at least four stakes on each side. Fulton presented these rules as evidence that the railroad had acted negligently in securing the poles with only three and two stakes on the respective sides of the flat car.

■ A court may permit a jury to consider as evidence of negligence the failure to comply with relevant national rules or standards of conduct. *See, e.g., Brown v. Cedar Rapids & Iowa City Ry.*, 650 F.2d 159, 162–63 (8th Cir. 1981); *Boston & Maine R.R. v. Talbert*, 360 F.2d 286, 290 (1st Cir. 1966). The railroad argues the rules are irrelevant because they were promulgated to ensure the safety of the load, the car, and the persons handling the car en route to its destination, and have nothing to do with the safety of persons unloading the car after it reaches its destination. We reject the railroad's argument. Nothing in the record supports the railroad's contention that the rules are not relevant evidence of its negligence. Without any limiting language, the preface to the rules itself emphasizes that a purpose of the rules is to aid in protecting human life.[2] Witness L. V. Pat Murphy, who for fifteen years implemented the rules as an assistant general foreman, testified that the rules were promulgated to enhance the safety of employees unloading, as well as loading, the cars.[3] The court here properly allowed the loading rules into evidence and properly instructed the jury that the rules were "not admitted as legal standards of duty, but as evidence of the measure of caution which ought to be exercised in situations to which the rules apply."

■ Alternatively, the railroad argues that even if the rules are relevant, their probative value is substantially outweighed by the danger of unfair prejudice to the railroad. *See* Fed.R.Evid. 403. However, it does not point to any specific prejudice. The jury's awareness that the railroad failed to comply with its own rules is not the sort of prejudice the Federal Rules of Evidence contemplate.

■ The railroad also objects to the court's instruction that the railroad had a duty to inspect its cars for defects before permitting its employees to work with them. The railroad contends Fulton did not prove its failure to inspect the car could have been a proximate cause of the accident. We agree with the trial court that there was "evidence that would warrant the jury to determine that there should have been an additional staking, and that is part of the car." From the evidence presented, the jury could reasonably infer that improper staking contributed to McBride's accident and that the railroad's failure to inspect the flat car was a breach of its duty. *See Missouri-Kansas-Texas Ry. v. Hearson*, 422 F.2d 1037, 1040 (10th Cir. 1970).

## II

■ The railroad argues that since Fulton's case was grounded upon the rescue doctrine, the court should have instructed the jury not to attribute to the railroad any negligence of McBride "which was a cause of [McBride's] own perilous position." Under the "rescue doctrine," a rescuer who is

---

**2.** That preface provides, as pertinent:

"These rules have been formulated for the purpose of providing uniform, safe and economical methods of loading in open top cars, and the material specified in these rules for securing the load are minimum requirements. . . .

"In the loading of such cars the hazards connected with speed, multiple track railroads, tunnels, bridges, overhead structures, electric conductors, and the *necessity of protecting human life* and property should be borne in mind."

(Emphasis added.)

**3.** We find unmeritorious the railroad's complaint that the trial court allowed Murphy to express his personal opinion as a lay witness, rather than as an expert. Murphy testified as an expert "with respect to the loading rules." The court did not abuse its discretion by permitting Murphy to state his interpretation of the rules' purposes. *See Wallner v. Kitchens of Sara Lee, Inc.*, 419 F.2d 1028, 1032 (7th Cir. 1969).

injured while attempting to save an imperiled party may recover from a third party whose negligent conduct places the party in peril. The railroad contends that a necessary element of the rescue doctrine is the third party's negligence in placing another in an imperiled position; therefore, it can be liable under the rescue doctrine only for its own negligence in placing McBride in his perilous position, not for McBride's negligence in endangering himself.

The railroad's novel argument overlooks that the rescue doctrine also permits a rescuer to recover for his injuries from the imperiled party if that person has negligently placed himself in danger. *Provenzo v. Sam*, 23 N.Y.2d 256, 244 N.E.2d 26, 28, 296 N.Y.S.2d 322, 325 (1968); *Ruth v. Ruth*, 213 Tenn. 82, 372 S.W.2d 285, 289 (1963). A third party's negligence therefore is not a necessary element of the doctrine. Since FELA provides that a railroad is liable to any employee suffering injuries resulting in whole or part from the negligence of the railroad's officers, agents, or fellow employees, 45 U.S.C. § 51, as a matter of law McBride's negligence in endangering himself is attributable to the railroad. The trial court therefore did not err in refusing to give the railroad's requested instructions.

### III

On the issue of damages, the railroad contends the trial court should not have rejected its requested instruction that any "amount awarded is not taxable income to plaintiff." At the time of trial in the instant case the decisions in this Circuit left such an instruction to the trial court's informed discretion. *E.g., Sanchez v. Denver & Rio Grande Western R.R.*, 538 F.2d 304, 305 (10th Cir. 1976), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977). After trial, however, and before appellant filed his brief, the United States Supreme Court held that in FELA cases, if requested, a trial court must instruct a jury its award is not subject to any income taxes and it should not consider such taxes in calculating an award. *Norfolk & W. Ry. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980).

Fulton contends that *Liepelt* should be given prospective application only. But recently in *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486 n.16, 101 S.Ct. 2870, 2879 n.16, 69 L.Ed.2d 784 (1981), the Supreme Court settled that question, declaring the argument "insubstantial." *Gulf Offshore* affirms the general rule that we should apply the law in effect at the time we render our appellate decision, except when manifest injustice would result. Applying *Liepelt* retrospectively is not manifestly unjust because "the change does not extinguish a cause of action but merely requires a retrial on damages before a properly instructed jury." *Id.* We find Fulton's other arguments on this issue are also insubstantial.

### IV

The railroad contends the trial court should not have permitted the jury, in assessing damages, to consider Fulton's future loss of earnings. It acknowledges that an injured worker can recover for future loss of earnings. *E.g., Chesapeake & O. Ry. v. Carnahan*, 241 U.S. 241, 244, 36 S.Ct. 594, 595, 60 L.Ed. 979 (1916). But the railroad argues that Fulton failed to produce sufficient evidence from which the jury could determine with reasonable certainty whether Fulton's injury would impair his future earnings. We do not agree. *See, e.g., Wiles v. New York, Chicago & St. Louis R.R.*, 283 F.2d 328, 332 (3rd Cir. 1960). We see no error in the trial court's handling of the evidence and instructions but do not comment more specifically because there will be a new trial on damages and the evidence there may be different.

Because the railroad has fully litigated the issue of liability, and the only trial court error we have found is its failure to give a proper instruction on the income taxability of the damages, we remand this case for a new trial on damages only. *See Gulf Offshore*, 453 U.S. at 486 n.16, 101 S.Ct. at 2879 n.16; *Trejo v. Denver & Rio Grande Western R.R.*, 568 F.2d 181, 184–85 (10th Cir. 1977). At that retrial the trial court

should give a *Liepelt* instruction on the taxability of the damages award.

It is so ordered.