Lonnie L. WHARF, Plaintiff–Appellee,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY, a corporation,
Defendant–Appellant.

Lonnie L. WHARF, Plaintiff–Appellant,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY, a corporation,
Defendant–Appellee.

Nos. 94–35097, 94–35286.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 1995.

Decided July 21, 1995.

David M. Reeve, Kroschel & Associates, Bellevue, WA, for defendant-appellant-cross-appellee.

Fred Diamondstone, Groshong, Lehet & Thornton, Seattle, WA, for plaintiff-appellee-cross-appellant.

Before: WRIGHT, HALL, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Lonnie L. Wharf ("Wharf") sued his employer, Burlington Northern Railroad ("Burlington"), under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, after a workplace injury to a finger on his left hand. A jury trial was conducted by a magistrate of the United States District Court for the Eastern District of Washington. The jury, finding that Burlington's negligence had caused the injury, awarded Wharf $90,000 in compensatory damages.

Burlington appeals the trial court's grant of judgment as a matter of law on the issue of Wharf's contributory negligence. Because Wharf was engaged in a rescue when he was injured, and because there is no evidence that Wharf's conduct was wanton or reckless,

we affirm the ruling on contributory negligence.

On cross-appeal, Wharf requests a new trial on damages because of opposing counsel's misconduct and newly discovered evidence. Before trial, the parties had stipulated that Wharf continued to be employed by the railroad. Burlington's counsel learned during trial that the railroad planned to fire Wharf during Wharf's counsel's closing argument, but Burlington's counsel did not inform Wharf or the court. Instead, Burlington's counsel argued in closing that "Wharf still has his job."

Wharf's timely new trial motion, made under Fed.R.Civ.P. 59 and 60, was denied because the trial court believed it was without jurisdiction to grant the motion. The trial court believed the motion was "in essence" an action for wrongful termination and was therefore preempted by the mandatory arbitration provisions of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–88. We reverse because the motion is not preempted; we find that Burlington's counsel engaged in misconduct justifying a new trial; and we remand for a new trial on damages.

## BACKGROUND

Wharf was injured while working as a switchman/brakeman for Burlington on a train loaded with ballast (gravel) that was being spread on a newly laid track in the trainyard. Mr. Puhek, a co-worker of Wharf, had become trapped in frozen ballast in a railroad car. Wharf and other co-workers set about removing ballast from underneath the railroad car in an attempt to free Puhek. After pulling out ballast for 20 to 25 minutes, Wharf took a break. While resting and warming up for a minute, he heard some yelling above him, stepped back, tripped over a spike maul,[1] and struck his finger on a rail, severing a tendon in the ring finger of his left hand. Other workers continued to remove the ballast and were ultimately successful in freeing Puhek.

Wharf sued Burlington under the FELA for his finger injury. Wharf testified at trial that, prior to his injury, he had been employed by the railroad as a switchman/brakeman doing "road work." Three weeks after his finger was surgically repaired, he returned to work, but he found that the loss of his finger joint deprived him of a certain amount of grip strength, so that he could not hold onto the side of a moving railway car with his left hand for the length of time required to perform road work. Wharf testified that he was still employed doing yard work, which required him to grip for shorter periods. He said he performed yard work capably.

Burlington's counsel immediately forwarded a transcript of Wharf's testimony to Burlington's in-house counsel for a determination of whether Wharf could be withheld from service (i.e., terminated) under the parties' collective bargaining agreement ("CBA"). Prior to closing arguments, Burlington decided to terminate Wharf during his counsel's closing argument. Burlington's counsel was informed of the decision, but he did not communicate the decision to Wharf or the court. Instead, he allowed the court to read, without modification, the following stipulation to the jury:

> At all times alleged, the plaintiff was employed by defendant as a switchman/brakeman.... Plaintiff has been employed by the defendant for more than 20 years.... Plaintiff continues to work for the railroad as a switchman/brakeman.

In closing, Wharf's counsel asked the jury, among other things, for damages for income loss in the range of $115,000 to $252,000, based on the difference between road pay and yard pay. Burlington's counsel, as part of his own closing argument, told the jury: "Plaintiff's counsel thinks $350,000 is what a finger's worth, and Mr. Wharf still has his job." After the jury withdrew for deliberations, Wharf learned that he had been terminated.

## DISCUSSION

I. THE TRIAL COURT PROPERLY GRANTED JUDGMENT AS A MATTER OF LAW ON WHARF'S CONTRIBUTORY NEGLIGENCE

■ Burlington appeals the trial court's decision to grant Wharf's motion for judg-

---

**1.** A spike maul is a modified sledgehammer used to drive spikes into a rail.

ment as a matter of law on the issue of Wharf's contributory negligence. We review *de novo* the grant of judgment as a matter of law. *Zamalloa v. Hart,* 31 F.3d 911, 913 (9th Cir.1994). We affirm on the basis of the rescue doctrine.

"Under the 'rescue doctrine,' a rescuer who is injured while attempting to save an imperiled party may recover from a third party whose negligent conduct places the party in peril." *Fulton v. St. Louis–San Francisco Ry.,* 675 F.2d 1130, 1133–34 (10th Cir.1982). The rescuer may also recover from the imperiled party if that party's negligence caused the peril. *Id.* at 1134. "Since FELA provides that a railroad is liable to any employee suffering injuries resulting in whole or part from the negligence of the railroad's officers, agents, or fellow employees, 45 U.S.C. § 51, as a matter of law [the imperiled party's] negligence in endangering himself is attributable to the railroad," *Fulton,* 675 F.2d at 1134, as is the negligence of any co-worker who contributed to Puhek's peril and the need for the rescue. *See id.* Therefore, regardless of whether the railroad, Puhek, or a co-worker caused Puhek's plight, the rescue doctrine applies to Wharf's claim against Burlington, *see id.* at 1133–34, if Wharf was injured in effecting the rescue.

We find that Wharf was in fact injured in connection with the rescue. The facts surrounding the injury are undisputed. Burlington conceded that Wharf was "in the process of helping Mr. Puhek" when Wharf "got cold, got tired, stepped away from that position onto the ballast, thought he heard something, ... [and] he looked up and started to step backwards." Wharf gave uncontradicted testimony that he looked up and stepped back "to see if they were yelling down at us to quit digging." On these facts, it is clear that Wharf's involvement in an ongoing rescue effort was the reason he stepped backwards without looking at the ground and tripped over the spike maul. The rescue doctrine applies as a matter of law.

Under the rescue doctrine, no comparative fault may be assessed against the rescuer unless his or her conduct in performing the rescue was wanton or reckless. *See Berg v. Chevron U.S.A., Inc.,* 759 F.2d 1425, 1430 (9th Cir.1985); *Furka v. Great Lakes Dredge & Dock Co.,* 755 F.2d 1085, 1088 (4th Cir.), *cert. denied,* 474 U.S. 846, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985). The evidence shows that Wharf tripped while looking away from his direction of travel. That could constitute negligence, but it does not amount to reckless or wanton conduct. Therefore, the court was correct in granting judgment as a matter of law on the issue of Wharf's contributory negligence.

## II. THE TRIAL COURT INCORRECTLY DENIED WHARF'S NEW TRIAL MOTION

### A. *The New Trial Motion Was Not Preempted By The RLA*

Wharf cross-appeals the denial of his motion for a new trial on the issue of damages. He made the timely motion under Fed.R.Civ.P. 59 and 60 on the grounds of newly discovered evidence and Burlington's alleged factual misrepresentations at trial. The trial court believed that the new trial motion was "in essence" an allegation of wrongful termination. Because the RLA preempts any FELA-based action for wrongful termination or retaliatory discharge, *see Mayon v. Southern Pac. Transp. Co.,* 805 F.2d 1250 (5th Cir.1986), the trial court denied the new trial motion without reaching the merits.

We review *de novo* the determination that Wharf's new trial motion was preempted.[2] We reverse because although Wharf's new trial motion was based on misconduct surrounding Wharf's termination, and although the termination may have been wrongful and may be grounds for an action under the RLA, Wharf's new trial motion was not akin to a wrongful termination action and should not have been recharacterized as

**2.** *See Lewy v. Southern Pac. Transp. Co.,* 799 F.2d 1281, 1286–87 (9th Cir.1986) (employing *de novo* review of legal questions relating to the trial court's subject-matter jurisdiction under the FELA, or relating to statutory interpretation of the FELA and RLA).

such.[3] The new trial motion should have been granted if misconduct of opposing counsel prevented the jury from considering the full extent of Wharf's damages. *See Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir.1990). Wharf's damages include the loss of his job if that loss was proximately caused by his impairment. The RLA does not cut off Wharf's right to have the jury consider the full extent and consequences of his workplace injuries.[4] As the Third Circuit stated in *Slage v. Pennsylvania R.R.*:

> Under [the FELA, the district court] has jurisdiction of the claim by plaintiff against his employer for damages suffered by him through the negligence of his employer. The Railway Labor Act ... has no application to a claim for damages to the employee resulting from the negligence of an employer railroad.

328 F.2d 775, 777 (3d Cir.1964).[5] Nothing in the RLA prevents prosecution of an action properly within the scope of the FELA to its ultimate conclusion,[6] complete with the safeguards provided by Rules 59 and 60. This principle remains valid even if a new trial on damages would require the court to examine facts that would also be relevant to a wrongful discharge claim under the RLA.[7]

3. Burlington makes the following argument in an attempt to recast the new trial motion into a wrongful discharge action: Burlington does not concede that Wharf is actually impaired in any way, but Burlington claims that if Wharf were in fact impaired in the ways he testified he was, he would be unqualified even for yard work. Burlington argues that Wharf is estopped from denying the impairments to which he testified at trial; those impairments would render him unfit for yard work; Burlington therefore had the right under the parties' collective-bargaining agreement ("CBA") to fire Wharf based on his trial testimony of impairment; and if Wharf disagrees with Burlington's interpretation of the CBA, his remedy is under the RLA.

This "estoppel by testimony" argument boils down to the simple assertion that Wharf's termination was not wrongful under the CBA. It is essentially an affirmative defense to a wrongful discharge claim. As such, it is irrelevant to the disposition of the new trial motion: Neither the new trial motion, nor a new trial itself, involves a determination of whether Wharf's termination was wrongful under the CBA.

4. *Cf. Atchison, T. & S.F. Ry. v. Buell*, 480 U.S. 557, 565, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987) ("It is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion.").

5. The facts in *Slage* were strikingly similar to the case at hand. In *Slage*, the jury awarded the plaintiff $25,000 for workplace injuries under the FELA. When the defendant railroad refused to permit the plaintiff to return to work, the trial court granted a new trial on damages only, on the ground that plaintiff's claim had not been fully presented. As in Wharf's case, there was no indication at trial that Slage's prior work for the railroad had been unsatisfactory, and the medical testimony for the defense did not suggest any present deterioration of Slage's condition. Following trial, however, the railroad refused to permit Slage to return to work. It based its refusal on: (1) a medical examination of Slage by its medical officer after the trial; (2) Slage's trial testimony; and (3) the medical opinions of Slage's doctor. The trial court granted Slage's motion for a new trial on damages. On appeal, the railroad argued that a new trial was not necessary because Slage had an adequate remedy at law through an action under the RLA based on the parties' CBA. The Third Circuit affirmed the trial court's determination that the RLA had no application to the new trial motion.

6. The FELA, for the most part, is not preempted by the RLA. "[A]bsent an intolerable conflict between the two statutes, we are unwilling to read the RLA as repealing any part of the FELA." *Buell*, 480 U.S. at 566–67, 107 S.Ct. at 1416.

7. *See Hawaiian Airlines, Inc. v. Norris*, —— U.S. ——, —— – ——, 114 S.Ct. 2239, 2248–49, 129 L.Ed.2d 203 (1994) (noting that actions involving rights independent of the CBA may be pursued in a non-RLA forum, under non-RLA law, even if they require examination of the very same facts that an arbitrator would examine in an action under the RLA).

In concluding that Wharf's motion was preempted by the RLA, the trial court expressed concern that if the motion were granted, the new trial would require a determination of whether damages from Wharf's discharge stemmed from his injury or from a wrongful termination. The trial court believed it was without jurisdiction to make that determination, which, the court believed, was reserved to arbitrators under the RLA, presumably because determining whether Wharf's injury rendered him unable to perform yard work might require the trier of fact to refer to the parties' CBA to see what physical capabilities are necessary for yard work.

This jurisdictional concern is groundless. A new trial on damages will not require a determination of whether Wharf's termination was in violation of the CBA. That inquiry should be left

Having concluded that consideration of the new trial motion was not preempted, we turn to the merits of the motion.

### B. *Standards for Granting a New Trial*

In general, this court reviews the denial of a new trial motion for abuse of discretion. *Beverage Distribs., Inc. v. Olympia Brewing Co.*, 440 F.2d 21 (9th Cir.), *cert. denied*, 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971). In the case at hand, however, the trial court did not reach the merits. Where the trial court has erroneously failed to exercise its discretion, we may either remand or, if the record is sufficiently developed, decide the issue ourselves. The record before us in this case includes findings of fact following an evidentiary hearing. On the basis of the trial court's findings, we conclude that a new trial should have been granted under Rules 59 and 60.

Rule 59 allows the court to grant a new trial "for any of the reasons for which new trials have heretofore been granted." Rule 60 allows the court to grant a partial new trial "upon such terms as are just," on the grounds of "fraud ... misrepresentation, or other misconduct of an adverse party," among other grounds. The standards for granting new trials are essentially the same under both rules, although a Rule 59 motion, because it must be made within 10 days, may require a slightly lower showing than a motion under Rule 60. *Jones*, 921 F.2d at 878

n. 3. A new trial is properly granted where a party can:

> (1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct [and]
>
> (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense.

*Id.* at 878–79. As explained in the following section, Wharf has met both prongs of the *Jones* test, and a new trial on damages is warranted.

### C. *Wharf Is Entitled To A New Trial On Damages*

#### 1. Misconduct

Burlington's counsel misled the court and jury by failing to disclose Wharf's termination to Wharf and the court and by arguing in closing that "Wharf still has his job," when counsel knew otherwise. The parties had agreed to stipulate that Wharf continued to be employed by the railroad. Wharf believed the stipulated fact to be true. Burlington knew that Wharf believed he would continue to be employed and that a decision had been made to terminate him.[8] The stipulated fact was false. Burlington's counsel nevertheless allowed the court to read the stipulation to the jury. Compounding the misconduct, Burlington's counsel took advantage of Wharf's ignorance by arguing the false position to the jury.

Burlington responds by arguing that its threat at the settlement conference[9] put

---

to arbitrators under the RLA. The jury will need only consider the narrower question of whether Wharf's termination was proximately caused by his injury. If it was, the resulting loss of earnings is an appropriate consideration in the FELA action.

We note, further, that even if Wharf's job description under the CBA becomes peripherally relevant to the issue of proximate cause, the trial court would not be without jurisdiction to decide the case before it. Interpretation of the CBA is the exclusive province of the RLA, but where a claim arises independently of the CBA, the fact that its resolution requires reference to the terms of the CBA does not bar a court from adjudicating the claim. *See Hawaiian Airlines*, —— U.S. at —— —— & n. 8, 114 S.Ct. at 2248–49 & n. 8 (" '[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of ... litigation plainly does not re-

quire the claim to be extinguished.' ") (quoting *Livadas v. Bradshaw*, —— U.S. ——, ——, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994)).

8. This differentiates the current case from one in which the parties, both uncertain about the true facts, entered into a stipulation for convenience, each party assuming the risk that the facts would turn out to be different.

9. At the settlement conference, when Wharf claimed his grip strength was reduced by the injury, Burlington's attorney informed Wharf and his counsel that Burlington could withhold Wharf from service if he testified at trial that he could not safely perform the essential job function of holding onto the side of a moving car. Wharf's counsel apparently responded that in that case, Wharf would ask the jury for $1 million.

Wharf on notice that he would be terminated if he testified to certain facts, and no further updates on Burlington's implementation of that threat were necessary. This argument misses the point. The stipulated fact—Wharf's continued employment with the railroad—was true when the stipulation was entered into. Once the railroad made a decision to terminate Wharf, the stipulated fact became false. Counsel's duty of candor to the court required him to notify the court before the court read into evidence a fact known to be false. Because that fact should not have been in evidence, it was improper for counsel to argue it to the jury.

### 2. Prejudice To Wharf

Having found that Burlington's counsel committed misconduct, we conclude that the second prong of the *Jones* test is also satisfied: the conduct prevented Wharf's claim from being fully and fairly presented.

Burlington's counsel misled Wharf into arguing, and misled the jury into believing, that Wharf's only income loss would be from his inability to do road work, or that Wharf could mitigate his damages through yard work. If Wharf had known he had been fired, he could have asked for additional damages from the jury.

This is not to say that a fully informed jury would necessarily have granted damages stemming from Wharf's termination. The jury would have had to decide whether those lost earnings were proximately caused by Burlington's negligence.[10] If they were not (*i.e.* if Wharf was fully capable of performing yard work, but his termination was the result of new, intentional conduct by Burlington) damages could not have been awarded under the FELA. Whether or not additional damages would actually have been granted, however, a new trial is justified because Burlington's misconduct prevented the jury from considering the full extent of the damages caused by Burlington's negligence.

---

10. Alternatively, if Wharf's yard work was presented to the jury as a form of mitigation of damages, Wharf could have asked the jury to

## III. INSTRUCTIONS ON REMAND

### A. *The RLA Does Not Limit Wharf's Injury–Related Damages, Including Lost Earnings*

Wharf argues that the RLA does not limit the damages recoverable in his FELA action. We agree as to those damages caused by Burlington's negligence. Wharf's discharge had one of the following causes: (1) the injury (compensated under the FELA); (2) wrongful termination (remedied under the RLA or other non-FELA law); or (3) a legitimate, non-injury-related cause (no remedy). We hold that, insofar as Wharf's loss of earnings was caused by Burlington's negligence, the loss is compensable under the FELA. Insofar as the loss of earnings is the result of new wrongful conduct by Burlington, Wharf may not recover for it in his FELA action, because the RLA preempts a claim for wrongful discharge under the FELA. Compensation for those earnings must be sought through a separate wrongful termination claim under the RLA or state law.

### B. *The New Trial Will Be On Damages Only*

In its order denying a new trial on damages, the trial court indicated that if a new trial were granted, the court would be inclined to open the issue of liability as well as damages. In general, the court has discretion to reopen liability if a new trial on damages alone would work injustice. *See Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). We do not foresee any such injustice resulting in Wharf's case. In the new trial on damages, the jury will of course have to determine the cause of Wharf's damages so that it does not award damages for wrongful discharge; but there is no reason to reopen the issue of Burlington's negligence. We remand for a new trial on damages only.

### C. *Wharf's Waiver of Rights Is Invalid*

Before the magistrate ruled on the new trial motion, he extracted from Wharf,

---

consider what his damages would have been without taking into account that form of mitigation.

*sua sponte,* a "limited and conditional waiver of rights to proceed under Railway Labor Act." The waiver reads, in part:

> In the event that a new trial is ordered and held in this case, Lonnie Wharf will waive his rights of recovery under the Railway Labor Act (R.L.A.) and the Collective Bargaining Agreement (C.B.A.) . . . for back pay and reinstatement.

The waiver was intended to foreclose Wharf from a double recovery if the trial court decided to grant the new trial motion and allow Wharf to seek damages for his discharge from the jury. The waiver appears to be based on the erroneous assumption that, in a new trial, Wharf would have been permitted to seek damages stemming from wrongful termination.

In light of our holding that Wharf's FELA action may not encompass damages for wrongful termination, it would be unjust to enforce the waiver. Wharf is entitled to a complete remedy, which involves two prongs (the FELA and the RLA).[11] It would be unjust to make Wharf waive the second prong of his remedy as a condition of pursuing the first prong. At the new trial on damages in the FELA action, the jury might determine that Wharf is fully capable of performing yard work, such that his termination was not proximately caused by Burlington's negligence and no additional damages could be awarded under the FELA. In that case, Wharf's only avenue for an adequate single recovery would be an action for wrongful discharge under the RLA. The trial court may not foreclose Wharf's RLA action as a condition of the new trial, to which he was unconditionally entitled, on FELA damages. The trial court extracted the waiver *sua sponte,* and justice requires that, *sua sponte,* we invalidate it.

## CONCLUSION

The trial court properly dismissed Burlington's defense of contributory negligence. We

affirm as to Burlington's liability. We hold that misconduct of Burlington's counsel prevented Wharf from fully and fairly presenting his damages to the jury. For that reason, we vacate the damage award and remand for a new trial on the issue of damages.

---

11. Given the mutually exclusive criteria for remedies under the FELA and the RLA, and the operation of the doctrines of *res judicata* and collateral estoppel, we do not foresee Wharf being able to obtain a double recovery. Likewise, we foresee the use of *res judicata* and collateral estoppel to prevent Burlington from successfully asserting inconsistent positions in the two actions and evading payment of compensation to Wharf, if in fact he is entitled to damages or back pay.